**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHRISTINE MOUSER, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br> v.<br><br>INGENIO, LLC,<br><br>     Defendant. | Case No. 1:23-cv-16103<br><br>Hon. Charles P. Kokoras |

**DEFENDANT INGENIO, LLC'S MOTION TO COMPEL
ARBITRATION AND MEMORANDUM OF LAW IN SUPPORT**

Ingenio, LLC, by its undersigned counsel, hereby moves this Court pursuant to FRCP 12(b)(3) and the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., to compel Plaintiff Christine Mouser to submit her claims to arbitration on an individual basis. This Motion is supported by the Memorandum of Law, below, and Declaration of Mike Ballard and exhibits, filed herewith.

## INTRODUCTION

When two parties contract to arbitrate claims arising from an agreement, they cannot – as a matter of law – ignore the arbitration provision and file a lawsuit. Despite agreeing to arbitrate any claim on an individual basis – and specifically acknowledging that agreement and consenting to the application of an arbitration provision – Plaintiff Christine Mouser ("Plaintiff" or "Mouser") filed a putative class action asserting that Ingenio, LLC ("Ingenio") violated certain provisions of the Illinois Biometric Privacy Act ("BIPA") by purportedly collecting Plaintiff's facial geometry in connection with her use one of Ingenio's web sites.

In doing so, Plaintiff tries to circumvent the arbitration provision and class action waiver that were and are part of the User Agreement that Mouser consented to follow. Mouser's claims

unquestionably fall within the scope of the agreement to arbitrate and she should be compelled to arbitrate on an individual basis. Accordingly, this Court should enforce the parties' arbitration agreement and compel Plaintiff to arbitrate her claims against Ingenio.[1]

## STATEMENT OF FACTS

**1.      Plaintiff Agreed to be Bound by Ingenio's User Agreement.**

Ingenio owns and operates a website, Keen.com, that markets itself as a virtual platform where account holders may interact with, ask questions, and obtain guidance from professional psychics. (Ex. A, Class Action Complaint, ¶ 1; Exhibit B, Declaration, ¶ 3.) Mouser alleges that she voluntarily opened an account on the Keen website. (Ex. A, ¶¶ 2-3.) Upon registering for the Keen account, persons like Plaintiff were required to either provide a Google login and password, an Apple ID and password, or a valid email with a new user-chosen password. Exhibit B, Declaration of Mike Ballard ¶¶ 5-7, and *Figure 1*.

Applicants were also required click an empty square/box. *Id*. ¶¶ 8-9, 14, and *Figures 2* and *5*. This click would cause the box to be filled with a blue color surrounding a white "check" mark, as seen in *Figure 2*. *Id*. Next to this square/box is the phrase, "I am at least 18 years old and have read and agree to the updated Full Disclaimer, User Agreement and Privacy Policy." *Id*. The words "Full Disclaimer, User Agreement and Privacy Policy" appear in a different colored font than the other text in that sentence. *Id*. ay ¶ 10 and Figure 2. Clicking on any of these three hyperlinked phrases will cause another web browser window to immediately open containing the

---

[1] By bringing this motion to compel arbitration, Ingenio expressly reserves its right to seek dismissal on other grounds. Ingenio has filed this motion before filing a motion to dismiss the complaint because the Court cannot address whether the complaint states a claim until it has addressed the threshold matter of whether the case can be pursued in this Court at all, in light of the arbitration provision. *See Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 142 (7th Cir. 1978). If the Court grants Ingenio's motion to compel arbitration, a motion directed at the Complaint will be moot.

complete referenced document, including specifically the User Agreement, which can also be saved or printed.  Id. at ¶¶ 10-12, *Figures 3 and 4*.

Towards the bottom of the screen is a wide and clickable virtual button with the words "Create Account" on it.  If an applicant clicks that button without activating the blue and white check mark, the application process will not proceed, and text will appear immediately above the "Create Account" button stating, "We're sorry, but you must accept the user agreement before continuing."  *Id.* ¶¶ 13-14, and *Figure 5*.

The records of Ingenio save the details of the application process as part of Ingenio's regular business practice.  Exhibit B, ¶ 26.  Per that information, the Plaintiff affirmatively clicked the box activating the check mark, and then clicked the "Create Account" button.  Plaintiff did so on August 6, 2013. *Id.* ¶¶ 16, 26.  Further, Ingenio periodically updated its User Agreement.  Each time it did so, registered users were required to agree to the new User Agreement by clicking a similar box acknowledging that the account holder had read and agreed to abide by the new User Agreement.  Plaintiff did so at every turn.  *Id.* ¶¶ 21 – 22, 26.

Each version of the User Agreement contained the requirement that the parties to the agreement submit all disputes "arising out of or in connection with the User Agreement." Ex. B and Exhibits 1-7 attached thereto. Moreover, the obligation to arbitrate rather than litigate is and always has been mutually imposed on both Ingenio and its registered users, including Plaintiff, by the plain terms of the various User Agreements.  *Id.*  Here, Plaintiff concedes that she is a registered user of the Ingenio/Keen website, which provides the basis for her alleged suit.  Ex. A, ¶ 2; *see also* Ex. B, ¶¶ 15-16.

## 2.    Ingenio Implemented an Arbitration Provision Prior to Plaintiff Registering for the Keen Website.

As noted above, Plaintiff first registered to use Keen.com on August 6, 2013.  Exhibit B. ¶

16.  At that time, the applicable User Agreement contained a mandatory arbitration clause.  Ex. B ¶¶ 16-17 and internal Exhibit 1.  Every subsequent version of the User Agreement required registered users to resolve all disputes through arbitration.  Ex. B and internal Exhibits 1 – 7.

### A.  Ingenio's Offer of Arbitration.

The Arbitration Provision – which is included in every version of the User Agreement that Plaintiff ultimately accepted – informs registered account users of all necessary information, including what arbitration is and how it works, the arbitration process, the types of disputes it covers, any limitations, and who pays for arbitration. *See, e.g.*, Ex. B ¶¶ 16-17, 24-25, and Exhibits 1 and 7. The current User Agreement begins by emphasizing the importance of that section of the Membership Agreement (in all capitalized letters) that all claims connected to the User Agreement must be resolved through arbitration and on an individual basis.  Ex. B., ¶ 24, and Exhibit 7.

Section 19 sets forth the "Mutual Arbitration Provision" in the current User Agreement. Ex. B, ¶ 25 and Exhibit 7.  It contains includes multiple subsections covering (1) the Agreement to Arbitrate pursuant to the Federal Arbitration Act, (2) a description of how the arbitration provision applies, including the designation of JAMS as the neutral arbitrator; (3) a description of situations where the Arbitration Provision does not apply; (4) a description of how arbitration is conducted; (5) an explanation of how arbitration is to be paid for; (6) an explanation of how arbitrators issue awards and how those awards can be enforced; and (7) further discussion of how a party may seek to compel arbitration. *Id.*

The Arbitration Provision explains precisely when and how it applies:

> Except as otherwise stated below, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or a forum other than arbitration, and you and Keen agree that any legal dispute or controversy covered by this Arbitration Provision, or arising out of, relating to, or concerning the validity, enforceability or breach of this Arbitration Provision, shall be resolved by binding arbitration in accordance with the JAMS Streamlined Arbitration Rules & Procedures ("JAMS Rules") then in effect, to be held (unless the parties agree in writing otherwise) within 45 miles of where you last provided

4

Services under this User Agreement. …. If for any reason JAMS will not administer the arbitration, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral arbitrator. If the JAMS Rules are inconsistent with the terms of this Arbitration Provision, the terms of this Arbitration Provision shall govern.

By entering into this Arbitration Provision, ***you agree to arbitrate disputes with any entity or individual, and waive your right to have such disputes resolved by a trial by a jury or judge, arising out of or related to this User Agreement, background checks, privacy, your relationship with Keen***, the termination of that relationship, trade secrets, unfair competition, compensation, breaks and rest periods, retaliation, discrimination or harassment, defamation, slander and libel, claims arising under the Fair Credit Reporting Act, Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, California Labor Code, California Fair Employment and Housing Act, California Family Rights Act, Affordable Care Act, Genetic Information Non-Discrimination Act, city or state statutes or regulations addressing the same or similar subject matters, and ***all other federal or state legal claims arising out of or relating to this relationship***, including, but not limited to, claims that may be asserted for any post-relationship conduct or time periods, such as defamation or retaliation.

*Id.* and Exhibit 7 ¶ 19.2 (emphasis added).  None of the enumerated exceptions or limitations to the applicability of the Arbitration Provision apply in this case.  *Id.* and Exhibit 7 ¶ 19.3

Further, the Arbitration Provision provides that any arbitration must be on an individual basis. This is set forth in all capital letters at the beginning of the User Agreement, and is further covered in greater detail in ¶ 19.4:  "You and Keen agree to resolve any dispute in arbitration on an ***individual basis only, and not on a class or collective action basis*** ("Class Action Waiver"). The arbitrator shall have no authority to consider or resolve any claim or issue any relief on any basis other than an individual basis, and shall not do so on a class or collective action basis. …" *Id.* ¶ 19.4 (emphasis added).

**B. Plaintiff Accepted Igneio's Offer to Arbitrate by Acknowledging that she Read, Accepted and Agreed to be Bound by the User Agreement, Arbitration Provision and Class Action Waiver.**

Ingenio included an Arbitration Provision in its User Agreement before Plaintiff first became an account holder.  Plaintiff affirmatively checked a box stating that she read and agreed to follow the User Agreement.  This is referred to as a "clickwrap agreement," *i.e.*, an agreement

formed when a website user clicks a button or checks a box that explicitly affirms acceptance after having the opportunity to scroll through the terms posted on the website, and such agreements are routinely enforced. *Topstep Trader, LLC v. Oneup Trader, LLC*, No. 17 C 4412, 2018 WL 1859040, at *2 (N.D. Ill. April 18, 2018); *Sgouros v. TransUnion Corp.*, No. 14 C 1850, 2015 WL 507584, at *4 (N.D. Ill. Feb. 5, 2015), *aff'd*, 817 F.2d 1029 (7th Cir. 2016) (citing *Nguyen v. Barnes & Noble*, 763 F.3d 1171, 1175-76 (9th Cir. 2014)); see also, *Van Tassell v. United Mktg. Grp., LLC*, 795 F.Supp.2d 770, 790 (N.D. Ill. 2011) (courts "regularly uphold" clickwrap agreements).

Upon each instance whereby Ingenio changed its User Agreement, Plaintiff assented to the new contractual arrangement by again affirmatively acknowledging that she read and agreed to follow the new versions of each User Agreement along the way. Ex. B, ¶¶ 15-22. In other words, the Plaintiff was required to execute a further "clickwrap" consent each time the Keen.com User Agreement was amended as a precondition to being able to continue using the Keen.com services as a registered user.

Similar to all other Ingenio/Keen.com account holders, Plaintiff received Ingenio's offer to arbitrate prior to first time she enrolled and using the Keen website services. *Id.* ¶ 13. Indeed, when the User Agreement was revised, Plaintiff again accepted those terms and continued to use her Keen.com account – thereby consenting to the terms of the Arbitration Provision. *Id.* ¶¶ 15-17.

### 3. Plaintiff Raises Claims Relating to the User Agreement and her Relationship with Ingenio.

Despite the existence of an agreement to arbitrate, Plaintiff filed her purported Class Action, alleging a breach of BIPA. As further alleged, Plaintiff was prompted to "allow Keen to collect her facial geometry … in order to have access to the [keen.com] application," which was akin to an insult to her "privacy interest in [her] unique biometric data…." Ex. A, ¶¶ 3, 9. All of

6

Plaintiff's claims arise from the same set of operative facts relating to her account and relationship with Ingenio. Thus, all of the alleged BIPA violations fall within the gambit of the Arbitration Provision in the User Agreement, which applies to all claims "arising out of or related to [the] User Agreement, background checks, privacy, [and Plaintiff's] relationship with Keen…." See User Agreement, ¶ 19.2.

## ARGUMENT

**1.    This Court Should Compel Arbitration Pursuant to the Parties' Agreement.**

While there may be a potential choice of law analysis in play insofar as Ingenio is headquartered in California, Plaintiff has alleged that she is a resident of Illinois, that the alleged BIPA violations occurred while Plaintiff was in Illinois, that Ingenio markets and directs marketing efforts to Illinois, and that "a substantial amount of the acts and omissions giving rise to this Action occurred" in Illinois. Ex. A, ¶¶ 14-18. There are no other claims asserted besides those arising under Illinois BIPA. Ingenio presumes that a "most significant contacts" analysis of the User Agreement would direct this Court to conclude that Illinois law would apply, although Ingenio further asserts that there is no meaningful daylight between California law and Illinois law as to the favorability of mutually agreed upon arbitration contracts.

California, Illinois and federal law strongly favor arbitration. The U.S. Supreme Court has already ruled that such arbitration provisions – including a waiver of any class action – are valid and binding. This Court should compel individual arbitration of Plaintiff's claims and dismiss the action because Plaintiff agreed to arbitrate her claims on an individual basis, and the dispute falls within the scope of the Arbitration Provision.

### A. The Federal Arbitration Act Controls and Requires Arbitration.

The Federal Arbitration Act ("FAA") embodies a strong federal policy favoring arbitration and ensures that arbitration agreements are rigorously enforced. *See, e.g., KPMG LLP v. Cocchi,* 565 U.S. 18, 21 (2011). "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA mandates that courts, "*shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). The FAA establishes that any ambiguities or doubts as to the scope of an arbitration agreement are to be resolved in favor of arbitration. *See Mastorbuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 62 (1995).

While federal law controls, Illinois law also embodies a strong public policy in favor of arbitration. *Wigginton v. Dell, Inc.,* 382 Ill. App. 3d 1189, 1198 (5th Dist. 2008) (noting "Illinois's strong policy in favor of enforcing arbitration agreements"); *Reed v. Doctor's Assocs., Inc.,* 331 Ill. App. 3d 618, 621 (5th Dist. 2002) ("Illinois public policy favors arbitration"); *ACME-Wiley Holdings, Inc. v. Buck,* 343 Ill. App. 3d 1098, 1103 (1st Dist. 2003) ("[t]he courts of this state favor arbitration"). In effectuating this strong pro-arbitration policy, courts will construe arbitration agreements to find that a dispute is subject to arbitration. *Keefe v. Allied Home Mortg. Corp.,* 2016 IL App (5th) 150360, ¶ 9 ("Whenever possible, Illinois courts will construe arbitration agreements to uphold their validity"); *In re H & R Block Refund Anticipation Loan Litig.*, 59 F. Supp. 3d 903, 910 (N.D. Ill. 2014) ("The court must construe the parties' intentions 'generously . . . as to issues of arbitrability'") (citation omitted). Accordingly, "any doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration." *Simmen v. Lehman Bros.,* 278 Ill.

App. 3d 573, 575 (1st Dist.1996).[2]

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4. The party seeking to compel arbitration must satisfy a two-pronged test: "(1) whether a valid agreement to arbitrate under the contract exists, and if so, (2) whether the dispute sought to be arbitrated is within the arbitration agreement's scope." *Ford Motor Credit Co. v. Cornfield,* 395 Ill. App. 3d 896, 906 (2nd Dist. 2009). Both conditions are met here, thus the FAA "leaves no place for the exercise of discretion," and mandates that the Court "shall direct the parties to proceed to arbitration." *Dean Witter, 4*70 U.S. at 218.

**B.  There is a Valid Agreement to Arbitrate Between the Parties.**

Plaintiff entered into a valid and binding contract with Ingenio which specifically included her express agreement to "resolve any dispute in arbitration on an individual basis only, and not on a class or collective action basis ...." Ex. B ¶¶ 15-26, and Exhibits 1-7, thereto, and Exhibit 7, ¶ 19.4.  In particular, from the first time Plaintiff registered to use the Keen.com website and its related services, she executed a "clickwrap" acceptance of the applicable User Agreement. *Id*. ¶¶ 15-16, 18-22.  The User Agreement has ***always*** contained an arbitration provision, and was not retroactively imposed. Ex. B, Exhibits 1 – 7 thereto.

The FAA specifies that valid contracts to arbitrate shall be enforced, 9 U.S.C. § 2, but state law applies in determining whether a valid arbitration agreement has been formed. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Bess v. DirecTV, Inc.,* 351 Ill. App. 3d 1148, 1152 (5th Dist. 2004) ("Whether the parties have agreed to arbitrate is determined under ordinary state-law contract principles"). Under Illinois law, "[l]ike any valid

[2] California public policy also favors arbitration as a speedy and relatively inexpensive means of dispute resolution. *Brodke v. Alphatec Spine Inc.*, 160 Cal.App.4th 1569 at 1577 (2008).

contract, a legitimate agreement to arbitrate requires an offer, acceptance, and consideration." *Equistar Chemicals, LP v. Hartford Steam Boiler Inspection & Ins. Co. of Connecticut*, 379 Ill. App. 3d 771, 778 (4th Dist. 2008)**.** Here, the Arbitration Provision easily meets all of these contractual requirements.

Ingenio offered Plaintiff – and all persons seeking to open Keen accounts – the right to arbitrate any dispute she might have with Ingenio. Plaintiff had the option – at multiple stages of (1) rejecting the offer to arbitrate and not use/discontinue her use of the Keen.com site, or, (2) accepting the offer and agreeing to be bound by the User Agreement, including the Arbitration Provision and Class Action Waiver. Plaintiff chose the latter. Her actions fit the classic definition of offer and acceptance.

Further, there was consideration for the Arbitration Provision because both parties agree that arbitration would be the method by which to settle disputes. Under Illinois law, mutual promises are sufficient consideration to support a contract. *Wilson v. Cont'l Body Corp.,* 93 Ill. App. 3d 966, 970 (1st Dist. 1981) ("mutual promises have long been held sufficient consideration to support a contract"). Courts recognize that mutual promises to arbitrate claims constitute adequate consideration for an enforceable arbitration agreement. *See e.g., Aste v. Metro. Life Ins. Co.,* 312 Ill. App. 3d 972, 976 (1st Dist. 2000) ("Under both Illinois and federal law, a mutual promise to arbitrate is sufficient consideration to support an arbitration agreement")*; Michalski v. Circuit City Stores, Inc.,* 177 F.3d 634, 636 (7th Cir. 1999) (parties' mutual agreement "to be bound by the arbitration process itself serves as  mutual consideration"); *Blair v. Scott Specialty Gases,* 283 F.3d 595, 603 (3d Cir. 2002) ("[w]hen both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced"). Here, Plaintiff and Ingenio each promised to arbitrate their disputes and to be bound by the

mutually applicable arbitration process, including questions "concerning the validity, enforceability or breach of this Arbitration Provision ...." Ex. B, Exhibit 4 thereto ¶ 19.2. "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). If they so agree, "an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc*., 586 U.S. ——, 139 S. Ct. 524, 527, 202 L.Ed.2d 480 (2019).

It is noted, too, that one of the changes to the arbitration requirements that were implemented since the Plaintiff first became a registered user of Keen.com benefits Illinois users like Plaintiff with respect to the location of the arbitration. Under prior versions of the User Agreement, all arbitrations were to take place in California. Ex. B, ¶ 17. Under the present User Agreement, Plaintiff can proceed through the binding arbitration here in her home state of Illinois: "[Arbitration is] to be held (unless the parties agree in writing otherwise) within 45 miles of where you last provided Services under this User Agreement." *Id*., ¶ 25. The obligation to arbitrate, too, is mutually applicable to both Plaintiff and Ingenio. Therefore, the Arbitration Provision is an enforceable contract under Illinois law. Plaintiff is bound by its terms.

### C.  Plaintiff's Claims Fall Within the Scope of the Arbitration Provision.

The Supreme Court has repeatedly held that where an agreement delegates to an arbitrator the threshold questions of arbitrability, validity, or existence, such agreements must be enforced and decided by the arbitrator in the first instance. *Rent-A-Center, W, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Courts have found that an arbitration agreement's incorporation of arbitration rules which delegate questions of arbitrability to the arbitrator to be sufficient to delegate questions of

arbitrability. *See Preston v. Ferrer*, 552 U.S. 346, 361-62 (2008) (where contract incorporated AAA rules, which rules delegate to arbitrator questions of arbitrability, validity and enforceability, parties agreed to delegate issues of arbitrability to arbitrator). Here, the Agreement states that arbitration must be filed with JAMS and that arbitration will be conducted in accordance with the referenced JAMS rules. Ex. B ¶ 25 and Exhibit 7. The JAMS rules authorize the arbitrator to decide questions or arbitrability. JAMS Streamlined Rule 8(b) states that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator."[3] Thus, to the extent Plaintiff attempts to contest whether the Arbitration Provision applies, that question must be decided by the arbitrator and the case must be dismissed.

The allegations in the Complaint unquestionably fall within the scope of the Arbitration Provision, which requires that any claim or dispute relating to the relationship between Igenio and Plaintiff – which is governed by the User Agreement – are subject to arbitration. Courts consistently resolve any doubts with respect to the scope of an arbitration agreement in favor of arbitration. *See Sherrier v. Alliant Credit Union,* 2022 IL App (1st) 211214-U, ¶ 55 ("unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute[,] [d]oubts should be resolved in favor of coverage") (citations omitted).

There is no question that Plaintiff's claims fall within the scope of the User Agreement and the Arbitration Provision, especially given the FAA's (and Illinois') overriding presumption of arbitrability. The Complaint alleges that Plaintiff was required to submit to a facial recognition

---

[3] The JAMS Rules can be found here: https://www.jamsadr.com/rules-streamlined-arbitration/ (last accessed December 21, 2023).

process as part of her enrollment process and precondition to her use of the Keen.com website. *See* Compl. ¶ 3. Accordingly, Plaintiff's claims fall squarely within the scope of the User Agreement and Arbitration Provision and must be arbitrated.

### D.  The Court Should Compel Individual Arbitration.

This Court should further dismiss Plaintiff's class action claims and order the parties to arbitrate the Complaint solely on an individual basis as Plaintiff waived class relief. The Supreme Court has consistently stressed that the FAA allows parties to "specify with whom they choose to arbitrate their disputes." *Stolt-Nielsen S.A. v. Animal Feeds Intl. Corp.*, 559 U.S. 662, 683 (2010); *Am. Express Co. v. Italian Colors Rest.* 570 U.S. 228, 2233 (2013); *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 344 (2011). The Supreme Court has made clear that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielsen*, 559 U.S. at 684.

Here, not only is there nothing in the Membership Agreement that permits class arbitration, but, in fact, the Arbitration Provision contains an unambiguous class action waiver specifically prohibiting class arbitration. At the very beginning of the Arbitration Provision it provides, in plain, all capitalized text. Ex. B ¶ 24, Exhibit 7. The Arbitration Provision then conspicuously states:

> You and Keen agree to resolve any dispute in arbitration on an individual basis only, and not on a class or collective action basis ("Class Action Waiver"). The arbitrator shall have no authority to consider or resolve any claim or issue any relief on any basis other than an individual basis, and shall not do so on a class or collective action basis. Notwithstanding any other provision of this Arbitration Provision or the JAMS Rules, disputes regarding the enforceability, revocability, or validity of this Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which: (i) the dispute is filed as a class or collective action; and (ii) there is a final judicial determination that all or part of the Class Action Waiver is unenforceable, the class and/or collective action to that extent must be litigated in a civil court of competent

jurisdiction, but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration.

*Id*. ¶ 25, Exhibit 7 19.4.

Accordingly, Plaintiff cannot proceed with her claims on behalf of the putative class either before this Court or in arbitration *See Trejo v. Advance Am., Cash Advance Centers of Illinois, Inc.,* No. 09 C 2278, 2009 WL 10713823, at *2 (N.D. Ill. June 23, 2009) (holding "that the Arbitration Provision and class action waiver here are enforceable, and thus, Plaintiff must proceed to individual arbitration"); *Jackson v. Payday Loan Store of Ill., Inc.,* No. 09C4189, 2010 WL 1031590, at *5 (N.D. Ill. Mar. 17, 2010) (finding the class action waiver to be enforceable and thus, barred plaintiff from bringing a claim on a class basis); *see also Livingston v. Associates Finance, Inc.,* 339 F.3d 553, 559 (7th Cir.2003) (where an enforceable arbitration exists, the court must enforce it in all its particulars, including a prohibition on class arbitration).

Simply put: Plaintiff entered into a valid and binding arbitration agreement with Ingenio and Plaintiff's dispute with Ingenio falls squarely within the scope of that agreement. As such, the two-prong test for determining whether arbitration is appropriate is met and satisfied. Accordingly, once the case is pursued in arbitration, as required, there would be nothing left for this Court to consider or resolve. Consequently, this Court should dismiss Plaintiff's claims and compel arbitration.

### E. In the Alternative, this Action Should be Stayed Pending Completion of Arbitration.

Based on the Arbitration Provision in the Membership Agreement, the case should be dismissed; but, in the alternative, Ingenio asks the Court to refer Plaintiff's claims to arbitration and to stay this action pending the conclusion of arbitration. Section 3 of the FAA provides that a court, upon determining that an action before it is subject to an enforceable arbitration provision,

"shall. . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Illinois Supreme Court held that "[i]f the court finds that an agreement to arbitrate exists and the issue presented is within the scope of that agreement, *a stay under section 3 of the FAA is mandatory*." *Jensen v. Quik Int'l,* 213 Ill. 2d 119, 124, 820 N.E.2d 462, 465 (2004) (emphasis added). Because Plaintiff's claims against Ingenio are subject to an enforceable arbitration provision, this Court should, at a minimum, stay this action pending such arbitration.

## CONCLUSION

For the foregoing reasons, Ingenio respectfully requests that the Court grant its motion and compel Plaintiff to arbitration and dismiss the action in its entirety or, in the alternative, stay the case until completion of arbitration.

Respectfully submitted,

INGENIO, LLC


By:   /s/ *Bryan E. Curry*
                Bryan E. Curry
                One of its attorneys

Jason E. Hunter (ARDC # 6237345)
Bryan E. Curry (ARDC # 6255803)
LITCHFIELD CAVO, LLP
303 West Madison Street
Suite 300
Chicago, Illinois 60606
(312) 781-6677 (main)
(312) 781-6587 (Hunter direct)
(312) 781-6678 (Curry direct)
(312) 781-6630 (Fax)
hunter@litchfieldcavo.com
curry@litchfieldcavo.com

15